# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DAVID C. BONNER, | ) |
| Plaintiff, | ) |
| | ) Case No. 14 C 1881 |
| v. | ) |
| | ) Judge Amy St. Eve |
| VILLAGE OF BURNHAM, et al., | ) |
| Defendants. | ) |

## ORDER

The Court denies Defendants' motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) and Rule 12(f) motion to strike [15]. Defendants' Answer is due on or before August 29, 2014.

## STATEMENT

On March 17, 2014, Plaintiff David C. Bonner ("Bonner") brought the present three-count Complaint alleging race discrimination and retaliation claims against Defendants Village of Burnham ("Burnham") and Peter J. Belos, the Chief of Police of the Burnham Police Department ("Chief Belos") in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. §§ 1981, 1983. Bonner also brings a claim against Burnham pursuant to *Monell v. Dept. of Soc. Servs. of N.Y.C.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Before the Court is Defendants' motion to dismiss pursuant to Rule 12(b)(6) and alternative motion to strike under Rule 12(f). For the following reasons, the Court denies Defendants' motion.

## LEGAL STANDARD

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff,* 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citation omitted). Under the federal notice pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Twombly,* 550 U.S. at 570). "In reviewing the

sufficiency of a complaint under the plausibility standard, [courts] accept the well-pleaded facts in the complaint as true, *Alam v. Miller Brewing Co.,* 709 F.3d 662, 665-66 (7th Cir. 2013), and draw "reasonable inferences in favor of the plaintiffs." *Teamsters Local Union No. 705 v. Burlington No. Santa Fe, LLC,* 741 F.3d 819, 823 (7th Cir. 2014).

**BACKGROUND**

In his Complaint, Bonner, an African-American male, alleges that during the relevant time period he was employed by Burnham, an Illinois municipal corporation, as a full-time police officer. (R. 1, Compl. ¶¶ 2, 4, 6.) Bonner further alleges that Chief Belos, was, and is Burnham's Chief of Police and was the decision-maker and policy-maker for the Burnham Police Department. (*Id*. ¶ 3.)

In 2002, Defendants hired Bonner as a police officer after Bonner passed the written, physical, oral, and psychological examinations as required. (*Id*. ¶ 7.) In 2005, Defendants promoted Bonner to the rank of sergeant after he passed the required examinations. (*Id*. ¶ 8.) At the time Defendants promoted Bonner, Burnham's table of organization recommended that the police department assign two officers in the rank of sergeant to perform supervisory and training duties for other officers. (*Id*. ¶ 9.) From 2005 through and including 2011, Bonner, who was the only sergeant, performed his assigned duties, including supervising other officers. (*Id*. ¶ 10.)

Bonner further alleges that beginning in May 2011, in addition to his responsibilities as the only sergeant of the Burnham Police Department, Defendants also assigned him the duties and responsibilities that the only lieutenant of the Burnham Police Department, Lieutenant Brne, who retired in May 2011, had routinely performed. (*Id*. ¶ 11.) After Chief Belos assigned Bonner the additional responsibilities and duties previously assigned to Lieutenant Brne, Bonner had to work a split shift beginning in July 2011. (*Id*. ¶ 12.)

In July 2011, Bonner successfully passed all required written, physical, oral, and psychological examinations as required for promotion to lieutenant. (*Id*. ¶ 13.) Also, Bonner alleges that despite successfully and satisfactorily meeting all requirements for promotion to the rank of lieutenant, Chief Belos refused to recommend Bonner for the promotion to the Village Council. (*Id*.) Bonner contends that he complained about not being promoted, after which Chief Belos demanded that he take and pass additional tests, including a polygraph test, psychological test, a physical agility test, and a fitness test. (*Id*. ¶ 15.) Despite passing these additional tests, as well as satisfactorily completing all requirements for promotion to the rank of lieutenant, Chief Belos refused to submit Bonner's name for promotion to the Village Council. (*Id*.)

Bonner then voiced his complaint of suspected racial discrimination to the local branch of the National Association for the Advancement of Colored People ("NAACP"), after which Burnham promoted him to lieutenant on February 1, 2012. (*Id*. ¶ 16.) After Bonner's promotion, Chief Belos immediately took steps to undermine and single out Bonner for disparate treatment by imposing different and more restrictive conditions on his employment in complete disregard of Bonner's senior status and rank. (*Id*. ¶ 17.) These conditions included that: (1)

2

Chief Belos did not assign Bonner an unmarked car like other senior officers; (2) Chief Belos did not provide Bonner with a cell phone like other senior officers; (3) Bonner was the only senior officer that Chief Belos did not confer seniority privileges to avoid routine emergency call-outs; (4) Chief Belos did not provide Bonner office keys so he could enter through the private door reserved for senior officers; (5) Chief Belos required Bonner to "punch in and out" like patrol officers and sergeants; (6) Chief Belos required Bonner to submit his vacation requests "once per year" unlike other senior officers; and (7) Chief Belos did not permit Bonner unlimited and unrestricted access to his assigned computer like other senior officers. (*Id.*)

Moreover, Bonner asserts that in an effort to further undermine his new senior status and superior rank of lieutenant and to further deprive him of the earned special status and privileges as "the second most senior officer" of the Burnham Police Department, Chief Belos engaged in a plan to promote a non-African American officer, Nick Nomikos, to a position senior to Lieutenant Bonner. (*Id.* ¶ 18.) Bonner maintains that Chief Belos hired Nomikos to become a special detective without requiring him to pass the competitive testing, examinations, or other recognized procedures for determining promotion eligibility. (*Id.* ¶ 19.) Also, Chief Belos was Nomikos' direct and sole supervisor. (*Id.* ¶ 20.) Thereafter, Chief Belos took steps to select, assign, and register Nomikos to attend and complete a series of advanced professional police development/training courses which were not offered to any African-American officers during this same time period. (*Id.* ¶ 21.) Chief Belos also assigned Nomikos to numerous high-profile, joint task force assignments to build Nomikos' professional law enforcement resume and to provide Nomikos special experiences that Chief Belos did not offer to other qualified and experienced African-American officers. (*Id.*)

According to Bonner, as Chief Belos openly promoted and steered Nomikos' daily assignments, special duties, and special training opportunities, Chief Belos continually denied requests from Bonner and others to apply and compete for similar assignments or to attend advanced professional education courses. (*Id.* ¶ 22.) Specifically, Chief Belos restricted Bonner's work assignments to police duties that entailed primarily office type administrative responsibilities, including report writing and reviewing other officers' reports. (*Id.*) Thirteen months after Chief Belos assigned Nomikos to the position of detective, Chief Belos recommended that the Burnham City Council and Mayor promote Nomikos to Deputy Chief, making him the second most senior officer over Bonner. (*Id.* ¶ 23.)

## ANALYSIS

### I. Retaliation Claim — Count I

First, Defendants contend that because Plaintiff has brought an action before the Illinois Human Rights Commission ("IHRC"), he cannot maintain this lawsuit in federal court. *See Krocka v. City of Chicago,* 203 F.3d 507, 516-17 (7th Cir. 2000) (citing *Geise v. Phoenix Co. of Chicago, Inc.,* 639 N.E.2d 1273, 159 Ill.2d 507, 203 Ill.Dec. 454 (1994)). In response, Plaintiff submits that he will voluntarily dismiss his pending claims before the IHRC to pursue his claims in the federal forum. Therefore, the Court denies Defendants' motion to dismiss in this regard.

3

Next, Defendants maintain that the Court must dismiss Bonner's retaliation claim because he did not include it in his EEOC Charge by not checking the box for retaliation. Bonner, however, brings his retaliation claim pursuant to § 1981 and Title VII, which courts consider under the same standard. *See Smith v. Bray,* 681 F.3d 888, 896 (7th Cir. 2012) Because Bonner need not exhaust any administrative remedies for bringing a retaliation claim under § 1981, the Court denies Defendants' motion to dismiss Count I. *See id.* at 896 n.2; *Tyson v. Gannett Co., Inc.*, 538 F.3d 781, 783 (7th Cir. 2008).

## II.     Race Discrimination — Count II

Defendants assert that Bonner must bring his § 1981 action pursuant to 42 U.S.C. § 1983. The Court agrees that § 1983 provides the exclusive remedy for violations of § 1981 committed by state actors. *See Campbell v. Forest Preserve Dist. of Cook County, Ill.,* 752 F.3d 665, 667 (7th Cir. 2014); *see also Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701, 736-37, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989). Nevertheless, in the opening paragraph of his Complaint, Bonner alleges that he is bringing the present lawsuit under both § 1981 and § 1983, among other statutes. The Court therefore denies Defendants' motion to dismiss Count II.

## III.    Monell Claim — Count III

In their motion to dismiss, Defendants further argue that Bonner has failed to sufficiently allege a *Monell* claim against Burnham. To establish liability against Burnham, Plaintiffs "must show the existence of an 'official policy' or other governmental custom that not only causes but is the 'moving force' behind the deprivation of constitutional rights." *Teesdale v. City of Chicago*, 690 F.3d 829, 833 (7th Cir. 2012). Bonner can demonstrate this requirement through (1) an actual official policy; (2) a practice or custom that, although not officially authorized, is widespread and well-established; or (3) a deliberate act from a Burnham employee with final policy-making authority. *See Gonzalez v. Village of West Milwaukee*, 671 F.3d 649, 664 (7th Cir. 2012).

Bonner brings his *Monell* claim under the third theory of liability, but admits that Chief Belos was not the "formal" final policy maker in determining who Burnham hired for the Deputy Chief position, but contends that Chief Belos was the final policy maker under the cat's paw theory of liability. "In the law of employment discrimination, the 'cat's paw' theory can apply when a biased subordinate who lacks decision-making power uses the formal decision-maker 'as a dupe in a deliberate scheme to trigger a discriminatory employment action.'" *Matthews v. Waukesha County*, ___ F.3d ___, 2014 WL 3600379, at *7 (7th Cir. July 22, 2014) (citation omitted). "Liability under that theory can be imposed where a non-decision-making employee with discriminatory animus provided factual information or input that may have affected the adverse employment action." *Id.* The cat's paw theory supports liability under § 1981 and § 1983, *see Smith,* 681 F.3d at 897, although the Seventh Circuit has cautioned, albeit in a footnote, that "[i]mputing a non-decision maker's motive to a municipal employer sounds a lot like respondeat superior liability." *Waters v. City of Chicago,* 580 F.3d 575, 586 n.2 (7th Cir. 2009). In any event, the Seventh Circuit has applied the cat's paw theory in the context of

4

municipal liability. *See, e.g., Rogers v. City of Chicago,* 320 F.3d 748, 754 (7th Cir. 2003), *overruled on other grounds Hill v. Tangherlini,* 724 F.3d 965, 968 (7th Cir. 2013); *Cf. Campion, Barrow & Assoc., Inc. v. City of Springfield, Ill.* 559 F.3d 765, 771 (7th Cir. 2009).

Viewing the facts and all reasonable inferences in his favor, Bonner alleges enough detailed facts plausibly suggesting that Chief Belos had influence over the ultimate decision when he recommended that the Burnham City Council and Mayor select Nomikos as Deputy Chief. *See Lavalais v. Village of Melrose Park*, 734 F.3d 629, 632-33 (7th Cir. 2013) ("the complaint must contain 'allegations plausibly suggesting (not merely consistent with)' an entitlement to relief.") (citations omitted). Specifically, Bonner alleges that Chief Belos engaged in a plan to promote a non-African American officer, Nomikos, to a non-competitive, staff position senior to Lieutenant Bonner by hiring Nomikos as special detective without any competitive testing, examination, or other recognized procedures to determine promotion eligibility. Bonner further alleges that Chief Belos specifically assigned Nomikos to certain training and high-profile cases to build Nomikos' professional law enforcement resume and to provide him with special experiences that Chief Belos did not offer to other qualified and experienced African-American officers. According to Bonner, as Chief Belos openly promoted and steered Nomikos' daily assignments, special duties, and special training opportunities, Chief Belos continually denied requests from Bonner and others to apply and compete for similar assignments or to attend advance professional education courses. Thereafter, Chief Belos recommended that the Burnham City Council and Mayor promote Nomikos to Deputy Chief. The Burnham City Council then promoted Nomikos to Deputy Chief. These allegations include "enough details about the subject-matter of the case to present a story that holds together," under the cat's paw theory. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404-05 (7th Cir. 2010). Accordingly, the Court denies Defendants' motion to dismiss Bonner's *Monell* claim as alleged in Count III of the Complaint.

## IV.     Motion to Strike

In the alternative, Defendant moves to strike the allegations in ¶ 17 of the Complaint because these specific allegations do not constitute adverse employment actions. Pursuant to Rule 12(f), the Court can strike "any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f); *Delta Consulting Grp., Inc. v. R. Randle Constr., Inc.,* 554 F.3d 1133, 1141 (7th Cir. 2009). Motions to strike are appropriate if they serve to expedite litigation. *See Heller Fin., Inc. v. Midwhey Powder,* 883 F.2d 1286, 1294 (7th Cir. 1989); *see also Talbot v. Robert Matthews Distrib. Co.,* 961 F.2d 654, 664 (7th Cir. 1992) (allegations may be stricken if matter bears no possible relation to controversy). District courts have considerable discretion under Rule 12(f). *See Delta,* 554 F.3d at 1141-42.

In general, an adverse employment action must materially alter the terms or conditions of employment to be actionable. *See Porter v. City of Chicago,* 700 F.3d 944, 954 (7th Cir. 2012). Examples of material adverse employment actions include termination, demotion, loss of benefits, decrease in wage or salary, or significantly diminished job responsibilities. *See James v. Hyatt Regency Chicago*, 707 F.3d 775, 782 (7th Cir. 2013); *see also Alexander,* 739 F.3d at

980. "While adverse employment actions extend beyond readily quantifiable losses, not everything that makes an employee unhappy is an actionable adverse action." *Nagle v. Vill. of Calumet Park,* 554 F.3d 1106, 1116 (7th Cir. 2009).

Nonetheless, because "[t]he question whether a change in an employee's job or working conditions is materially adverse, rather than essentially neutral, is one of fact," *Williams v. Bristol-Myers Squibb Co.,* 85 F.3d 270, 273-74 (7th Cir. 1996), the Court, in its discretion, denies Defendants' Rule 12(f) motion to strike.

**Dated:** August 7, 2014

_____
**AMY J. ST. EVE**
**United States District Court Judge**